STATE OF MAINE                          SUPERIOR COURT
YORK, SS.                               CIVIL ACTION
                                        DOCKET NO. RE-12-91
DANIEL C. BOOTHBY,              )       *JON - YOR - 6/12/2013*

                                )
        Plaintiff,              )
                                )
        v.                      )       ORDER
                                )
DANIEL L. DUNNELLS,             )
                                )
        Defendant.              )


## I.    Background

The action concerns one half acre of land claimed by both Plaintiff and

Defendant. Plaintiff has owned a four acre lot in Parsonfield, Maine since 1947.[1]

Defendant has owned an adjacent one hundred acre lot since 1980. Both parties claim

open, notorious, and continuous use of the contested property (the "Cooper Shop Lot")

throughout the ownership of their respective lots. Both parties claim that the deed to their

respective lot includes ownership of the Cooper Shop Lot.

In 2009, Defendant cleared the Cooper Shop Lot of all trees. Plaintiff

subsequently brought this action for declaratory judgment on his title to include the

Cooper Shop Lot, and damages for removal of the trees and rocks from the Cooper Shop

Lot. Defendant has raised Adverse Possession as an affirmative defense and now moves

the Court for Summary Judgment.

## II.    Standard

When a Defendant moves for Summary Judgment, "the plaintiff must establish a

prima facie case for each element of [the] cause of action that is properly challenged in

the defendant's motion." *Flaherty v. Muther*, 2011 ME 32, ¶38, 171 A.3d 640, 652-653.

---

[1] Plaintiff has used the Parsonfield home as a permanent resident beginning in 1977.

1

The burden then shifts to the Defendant to show that there is no genuine issue of material fact. Summary Judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 989 A. 2d 733, 738 (Me. 2010); *Dyer v. Department of Transportation*, 951 A.2d 821, 825 (Me. 2008). When reviewing a Motion for Summary Judgment, the Court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. *Id.*

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. *Reliance National Indemnity v. Knowles Industrial Services Corp.*, 2005 ME 29, ¶7, 868 A.2d 220, 224, citing *Univ. of Me. Found. V. Fleet Bank of Me.*, 2003 ME 20, ¶20, 817 A.2d 871, 877. Furthermore, "a fact is material if it could potentially affect the outcome of the case." *Id.*

III.    Discussion

In order to show ownership of property, a party must show that they hold good title or prove the elements of adverse possession. "Acquisition of title by adverse possession requires possession for a 20-year period that is actual, open, visible, notorious, hostile, under a claim of right, continuous, and exclusive." *Dowley v. Morency*, 1999 ME 137, ¶ 19, 737 A.2d 1061 (citations omitted). Both parties have presented expert testimony concerning the chain of title for their own parcels as including the Cooper Shop Lot. Both parties have presented the Court with affidavits concerning their own usage of the property in question as open, visible, and exclusive throughout the prescriptive period. Both parties believe that they have been paying taxes on the property.

2

Questions of material fact remain concerning the ownership of the property. The Court does not ~~grant~~ Summary Judgment at this time.

The claims of removal of trees under 14 M.R.S. § 7552 and removal of rocks pursuant to 14 M.R.S. § 7551-B can only be brought by the owner of the property. Therefore, these claims depend upon the determination of the ownership of the Cooper Shop Lot. Summary Judgment on these claims should not be granted without first determining the material fact of ownership of the Cooper Shop Lot.

IV.    Conclusion

The Court DENIES Defendant's Motion for Summary Judgment.


DATE:    6/12/13                                    _____
                                                    John O'Neil, Jr.
                                                    Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
JOSEPH LENKOWSKI
LAW OFFICE OF JOSEPH V LENKOWSKI
1038 MAIN STREET
PO BOX 1139
SANFORD ME  04073


ATTORNEY FOR DEFENDANT:
JAMES AUDIFFRED
LAW OFFICE OF JAMES L AUDIFFRED
374 MAIN STREET
PO BOX 1005
SACO ME  04072

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-12-91

JON-YOR- 9/16/2013

DANIEL C. BOOTHBY,

       Plaintiff,

       v.

DANIEL L. DUNNELLS,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)

JUDGMENT

## I.    Background

The action concerns one half acre of land claimed by both Plaintiff and Defendant in Parsonfield, ME. Plaintiff has owned a four acre lot in Parsonfield, Maine since 1947.[1] Defendant has owned an adjacent one hundred acre lot since 1980. Both parties claim open, notorious, and continuous use of the contested property (the "Cooper Shop Lot") throughout the ownership of their respective lots. Both parties claim that the deed to their respective lot includes ownership of the Cooper Shop Lot.

In 2009, Defendant cleared the Cooper Shop Lot of all trees. Plaintiff subsequently brought this action for declaratory judgment on his title to include the Cooper Shop Lot, and damages for removal of the trees and rocks from the Cooper Shop Lot. Defendant has raised Adverse Possession as an affirmative defense. A Bench trial was held on July 8, 2013.

## II.    Discussion

### a.  Quiet Title

#### i.  Cooper Shop Lot

---

[1] Plaintiff has used the Parsonfield home as a permanent resident beginning in 1977.

1

The First issue before the Court is to define the boundaries of the Cooper Shop Lot. The Court finds the testimony offered by both parties' experts to be compelling, however the Court finds the testimony of Plaintiff's expert, Professional Land Surveyor Dana A. Libby, to be more credible than the testimony of Defendant's expert, Professional Surveyor Scott Metcalf.

Surveyor Libby concluded that a description of the Cooper Shop Lot first appeared in the deed issued from George E. Stanley to Joseph H. Stanley dated September 24, 1880:

> "one other certain tract of land situate on the Easterly side of the first named road and bounded as follows: viz: Beginning at the northwest corner of said lot by the road aforesaid at land of Heirs of Hannah Seavey, thence Southerly to a point twelve feet south of the South West corner of the Cooper Shop, thence Easterly by a line parallel with the south end of said shop to a point in line with the Eastern side of the old cellar; thence Northerly by the eastern side of said old cellar to said Seavey's land, thence Westerly by said Seavey's land to first named bound containing one fourth acre more or less, together with the buildings thereon".

(Libby Aff. ¶ 4). Surveyor Libby tracked this lot through the following conveyances: Joseph H. Stanley to Joseph Boothby in 1880, to Thomas S. Churchill in 1888, to Willie F. Edwards in 1900, to Charles C. Walker in 1905, to Wilbur S. Walker in 1906, to Orren Sprague in 1918, and to Daniel Boothby in 1947. (Libby Aff. ¶ 4(b).) At the time of the conveyance from Walker to Sprague on October 25, 1918, Wilbur S. Walker the Cooper Shop Lot was described as:

> "one other certain lot of land in said Parsonfield on the Easterly side of the above said road and bounded on the West by said road; on the South by land of Brackett T Lord; on the East and North by land of said Charles C. Walker, containing three fourths of an acre more or less with the buildings thereon. Being the same lot described in deed of Thomas S. Churchill, recorded in York County Registry, Book 513, Page 538".

2

(Libby Aff. ¶ 4(a).)

Defendant's expert, Surveyor Metcalf, cites to the same deed language delineating the boundaries of the Cooper Shop Lot as does Surveyor Libby. However, there are a number of differences in their interpretation of various landmarks and boundary lines. Surveyor Libby placed the Cooper Shop at the southwest corner of the lot at the break in the stonewall, based upon a stone foundation and the place Daniel Boothby testifies that upon purchasing the property he was told a Cooper Shop once stood. Surveyor Metcalf places the Cooper Shop at 250 feet south of the Seavey Homestead Lot based upon remnants of stone foundation blocks. The importance of this placement is that the southern boundary of the Cooper Shop Lot is delineated by the Cooper Shop. Considering the descriptions of the proposed placements of the Cooper Shop, the Court finds the placement described by Surveyor Libby to be more likely to be the one referred to in the deed language. The foundation remnants referred to by Surveyor Metcalf would have been too small to house a cooper shop. Without evidence that the deed was referring to anything other than a literal cooper shop, the Court finds the placement of the Cooper Shop by Surveyor Libby to be more credible.

Surveyor Metcalf concluded that the "old cellar" which marks the eastern boundary of the Cooper Shop Lot is today found by the corner of the fieldstone foundation. Libby followed the line of the fieldstone foundation on the eastern boundary of the property as likely being the "old cellar". By measuring from the corner of the fieldstone foundation and directly south, Surveyor Metcalf ends up with a significantly smaller lot (<1/4 acre) than does Surveyor Libby who delineates at a southeasterly angle

3

(1/2 acre). The deed language estimates that the lot is ¼ acre in the 1880 conveyance and then ¾ acre in the 1918 conveyance. The Court recognizes that there may have been a mistake in calculating the size of the lot of land, however, the Court finds it unlikely that the lot was less than ¼ an acre. The Court finds that Surveyor Libby's conclusions are more credible.

Additionally, Surveyor Metcalf concludes that the Cooper Shop Lot was not conveyed from Charles C. Walker to Wilbur S. Walker. Surveyor Metcalf determines that the Cooper Shop Lot was conveyed as part of the Seavey Homestead Lot instead. The conveyance to the Seavey Homestead Lot from Charles C. Walker was ¾ acre and the lot described by Surveyor Metcalf is less than ¼ acre. Surveyor Metcalf concludes that the ¾ acre estimate was made in error. The Court finds the conclusions of Surveyor Libby regarding chain of title to be more credible.

The Court finds Surveyor Libby's conclusions to be more credible and rules that the Cooper Shop Lot was conveyed to Daniel Boothby by way of Orren Sprague. Furthermore, the Court finds that the boundaries are those depicted on Plaintiff's Exhibit 2.

b. Adverse Possession

At common law,

"A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period."

4

Weeks v. Krysa, 2008 ME 120, ¶ 12, 955 A.2d 234, 238. The conduct must be sufficient to put the true owner on notice that the land in question is exclusively held by the claimant. Id. at ¶ 13.

Defendant has not shown by clear evidence exclusive use of the property in question. Plaintiff continued to use the unimproved land by walking it and by allowing his children to play on it. Defendant is similarly unable to show the requisite state of mind. At the time of the use in question, Defendant believed that he owned the property and therefor did not use the land believing it was another's land, with the intent to claim title. Estate of Stone v. Hanson, 621 A.2d 852, 854 (Me. 1993).

Defendant argues that the Court must base its opinion on the statutory requirements of 14 M.R.S. § 816, not the common law. Section 816 requires that the moving party (1) hold a recorded deed to the claimed lands, (2) paid all taxes assessed, (3) held exclusive, (4) peaceable, (5) continuous, and (6) adverse possession (7) for a period of 20 years. Were the Court to apply this standard, Defendant would still be unable to meet the requirements of exclusive use and adverse possession. 14 M.R.S. § 816 (2012). Additionally, as detailed above, the Court finds that Defendant does not hold a recorded deed to the claimed lands. The Court finds that Defendant has not made a showing of the elements of 14 M.R.S. § 816 and denies Defendant's claim of adverse possession.

c. Conversion of Trees

Plaintiff has brought an action to recover for the trees Defendant harvested from the property. "Any person who in fact cuts down or fells any tree without the consent of the owner of the property on which the tree stands commits a civil violation for which the

5

forfeitures provided in this section may be adjudged." 17 M.R.S. § 2510 (2012). The Court finds that Defendant did in fact cut down trees from the property of Plaintiff without permission. However, the Court finds that there is good cause not to assess forfeitures. At the time Defendant cut down the trees in question, Defendant believed that he was the lawful owner of the land. Defendant was supported in his belief that he owned the land by two surveyors. Defendant believed that he was paying taxes on the land and had three times previously harvested timber from the land without objection. Because of his reasonable belief that he owned the land, Defendant did not act unreasonable by harvesting timber. Therefore the Court finds good cause not to assess forfeitures.

III.     Conclusion

The Court enters Judgment for Plaintiff on Plaintiff's count of Declaratory Judgment and Plaintiff's Count of Conversion of Trees. The Court does not adjudge forfeitures.

DATE:     9/16/13

_____
John O'Neil, Jr.
Justice, Superior Court

6

ATTORNEYS FOR PLAINTIFF:
JOSEPH LENKOWSKI
LAW OFFICE OF JOSEPH V LENKOWSKI
PO BOX 1139
SANFORD ME  04073

ATTORNEY FOR DEFENDANT:
JAMES AUDIFFRED
LAW OFFICE OF JAMES L AUDIFFRED
PO BOX 1005
SACO ME  04072